# IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF IDAHO

BRENTON R. KNEZOVICH,

               Plaintiff,

vs.

DIRECTV, L.L.C., a California limited
liability company,

               Defendant.

No. 4:17-cv-00165-MWB

**OPINION AND ORDER
REGARDING DEFENDANT'S
MOTION TO COMPEL
ARBITRATION AND TO DISMISS**

---

## TABLE OF CONTENTS

I.    **INTRODUCTION**................................................................. 2
    A.   *Background*.................................................................... 2
    B.   *Arguments Of The Parties* ........................................... 7

II.   **LEGAL ANALYSIS** ......................................................... 10
    A.   *Procedure For Deciding A Motion To Compel Arbitration*............... 10
    B.   *Standards For Enforcement Of An Arbitration Agreement* .............. 12
    C.   *Application Of The Standards*.......................................... 15
          1.   *Existence of a valid agreement* ......................... 15
                a.   *Coercion* ......................................... 16
                b.   *Incorporation by reference* ....................... 17
          2.   *Applicability To The Dispute At Issue*................... 21
          3.   *Summary* ..................................................... 23
    D.   *Stay Or Dismissal*...................................................... 23

III.  **CONCLUSION** ............................................................... 24

Plaintiff Brenton R. Knezovich filed his Complaint And Demand For Jury Trial on April 17, 2017, asserting claims of discrimination on the basis of disability and perceived disability pursuant to the Americans with Disabilities Act (ADA) and the Idaho Human Rights Act (IHRA) against his former employer, defendant DIRECTV. DIRECTV responded, on August 30, 2017, by filing its Motion To Compel Arbitration And To Dismiss. That Motion is now before me.

## I.   INTRODUCTION
### A.   Background

Knezovich alleges in his Complaint, and his personnel file shows, that he was hired by DIRECTV as an installer on May 10, 2010. The parties agree that, on that date, Matt Nelson, the Site Manager, who had hired Knezovich, had Knezovich sign numerous documents. Knezovich avers in his Declaration that the documents he signed were in "a large stack of papers," and that Mr. Nelson had him sign the paperwork without explaining to Knezovich what any of it was or meant. Knezovich Declaration, ¶ 4.

Knezovich avers,

> When he turned to the "Mutual Agreement to Arbitrate Claims," I stopped and said, "What is this all about?" Mr. Nelson said, "If you get fired because you screw up, you can't sue us." Mr. Nelson then said I would have to sign all of this paper work in order to get signed on with the company. I went ahead and signed it because I wanted the job.

Knezovich Declaration, ¶ 5. Knezovich avers that the "Mutual Agreement to Arbitrate Claims," that Mr. Nelson asked him to sign is in his personnel file, that he understands that a copy of it has been submitted as Exhibit B with DIRECTV's Motion, that he does recall signing that document, and that it appears to be his signature on that document.

*Id.* at ¶ 10. Thus, there is no dispute that the copy of the Mutual Agreement to Arbitrate Claims (which for simplicity I will call the Arbitration Agreement) signed by Knezovich on May 10, 2010, is the document submitted by DIRECTV as Exhibit B to its Motion.

The Arbitration Agreement provides, in part, as follows:

> Disputes which shall be submitted to binding arbitration for final resolution include; all claims or controversies, past, present or future, except claims identified in the Arbitration Procedure under the heading "Claims Not Covered by the Agreement," arising out of an employee's employment or its termination, that the Company may have against an employee or that an employee may have against any of the following [1] the Company; [2] its officers, directors, employees or agents in their capacity as such or otherwise, [3] the Company's parent, subsidiary and affiliated entities, [4] the benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates and agents, and or [5] all successors and assigns of any of them ["claims] (sic).

> Claims and disputes by employees hired after January 1, 1993 shall be governed by this Agreement. Employee understands that any reference in this Agreement to the Company will be a reference only to the DIRECTV subsidiary and affiliated entities who have adopted mandatory arbitration, and all successors and assigns of any of them.

> Except as set forth in the Arbitration Procedure, the decision of the Arbitrator shall be final and binding upon all parties. The parties' mutual promise to arbitrate differences, rather than litigate them before courts or other tribunals, provides adequate consideration for each other.

> By entering into this Agreement, Employee does not waive his/her right to file an administrative claim or complaint with the appropriate administrative agency, but does waive his/her right to file a civil action and a jury trial, because the Agreement provides for an adequate and equal opportunity for

the vindication of claims and complaints through this arbitration process.

* * *

This is the complete Agreement of the parties on the subject of arbitration of disputes [except for any arbitration agreement in connection with any pension or benefit plan]. This Agreement supersedes any prior or contemporaneous oral or written understandings on the subject. No party is relying on any representations, oral or written, specifically set forth in this Agreement (sic).

I ACKNOWLEDGE THAT I HAVE READ THIS AGREEMENT AND THE ARBITRATION PROCEDURE. THAT I UNDERSTAND THEIR TERMS, AND THAT I HAVE ENTERED INTO THIS AGREEMENT VOLUNTARILY AND NOT IN RELIANCE ON ANY PROMISES OR REPRESENTATIONS BY THE COMPANY OTHER THAN THOSE CONTAINED WITHIN THE AGREEMENT AND THE ARBITRATION PROCEDURE.

Arbitration Agreement, unnumbered ¶¶ 2-5, 9-10 (brackets in original).

Knezovich also avers that he does "not recall or believe any other documents were presented to me at the time that discussed or referenced arbitration other than the one page document entitled 'Mutual Agreement to Arbitrate Claims.'" Knezovich Declaration at ¶ 6. Notwithstanding his signature below the acknowledgment in the last paragraph of the Arbitration Agreement and the repeated references to an "Arbitration Procedure" in the Arbitration Agreement, Knezovich contends that there was no document called "Arbitration Procedure" or "Arbitration Procedure General" in his personnel file when it was provided to his counsel by DIRECTV's counsel; that the document entitled Arbitration Procedure General, submitted by DIRECTV as Exhibit A to its Motion, was not familiar to him; that he was not given a copy of it at the time he signed the packet of documents; and that he "do[es] not believe [he] was ever given an

opportunity to read or review [it] at any time." *Id*. at ¶¶ 11-12. He avers that he did not receive copies of any of the documents that he signed and never saw any of them again until recently. *Id*. at ¶ 8.

The Arbitration Procedure General attached to DIRECTV's Motion as Exhibit A begins with the following paragraph:

> DIRECTV [the "Company"] Arbitration Procedure is intended to be an impartial, cost effective and speedy mechanism for resolving employment or other disputes between the Company and its employees. Employees may obtain final and binding arbitration of all claims in accordance with the Mutual Agreement to Arbitrate Claims ["Arbitration Agreement"] and the procedure described herein. Since January 1, 1993 all new hires of DIRECTV companies that have adopted this Procedure, have been required to execute a Mutual Agreement to Arbitrate Claims as a condition of employment.

Arbitration Procedure General, unnumbered ¶ 1 (brackets in original).

The Arbitration Procedure General then specifies claims covered and not covered by the Arbitration Agreement, as follows:

> **Claims Covered by the Agreement**
>
> Disputes which shall be submitted to binding arbitration for final resolution include: all claims or controversies ["claims"], past, present or future, arising out of an employee's employment or termination, that the Company may have against an employee or that an employee may have against any of the following [1] the Company; [2] its officers, directors, employees or agents in their capacity as such or otherwise, [3] the Company's parent, subsidiary and affiliated entities, [4] the benefit plans or the plans' sponsors, fiduciaries, administrators, affiliates and agents, and or [5] all successors and assigns of any of them.
>
> The only claims that are arbitrable are those that, in the absence of the Arbitration Agreement, would have been

5

justiciable under applicable state or federal law. The claims covered by the Arbitration Agreement include, but are not limited to: claims for wages or other compensation due; claims for breach of any contract or covenant [express or implied]; tort claims; claims for discrimination [including, but not limited to, race, sex, sexual orientation, religion, national origin, age, marital status, physical or mental disability, or medical condition]; claims for benefits [except claims under an employee benefit or pension plans that either [1] specifies that its claims procedure shall culminate in an arbitration procedure different from this one, or [2] is underwritten by a commercial insurer which decides claims]; and claims for violation of any federal, state, or other governmental law, statute, regulation, or ordinance, except claims excluded below under the heading "Claims Not Covered by the Agreement."

**Claims Not Covered by the Agreement**

Claims for Workers' Compensation or Unemployment Compensation benefits cannot be submitted to binding arbitration under the Arbitration Agreement. Also not covered are claims by the Company or by the employee for temporary restraining orders or preliminary injunctions ["temporary equitable relief"] in cases in which such temporary equitable relief would be otherwise authorized by law. Such resort to temporary equitable relief shall be in aid of arbitration only, and in such cases the trial on the merits of the action will occur in front of, and will be decided by, the Arbitrator, who will have the same ability to order legal or equitable remedies as could a court of general jurisdiction.

Arbitration Procedure General (bolds and brackets in the original). The Arbitration Procedure General provides that the arbitrator's decision is final, except as provided therein, and subject to judicial review. *Id.*

As mentioned at the outset of this opinion, on August 30, 2017, DIRECTV filed its Motion. In support of its Motion, DIRECTV filed a Memorandum and the Declaration

Of Jennifer Tate, the former Senior Manager, Human Resources Information Systems for DIRECTV, L.L.C. To the latter document, DIRECTV attached, as Exhibit A, its Arbitration Procedure General and, as Exhibit B, the Arbitration Agreement signed by Knezovich on May 10, 2010. On September 20, 2017, Knezovich filed a Memorandum In Opposition to which he attached the Declaration of Deanne Casperson, one of his attorneys; copies of emails between counsel for the parties (Exhibit A); a copy of Knezovich's personnel file provided by DIRECTV's counsel (Exhibit B); and the Declaration of Brenton R. Knezovich. On October 4, 2017, DIRECTV filed a Reply, but no additional documents.

Neither party requested oral argument or an evidentiary hearing on the issues presented in the Motion, and I conclude that neither is necessary. Therefore, I will resolve that Motion on the parties' written submissions.

## B. *Arguments Of The Parties*

DIRECTV argues that federal policy favors arbitration and that arbitration is required in this case, because a valid and enforceable Arbitration Agreement exists and plainly applies to Knezovich's claims. Indeed, DIRECTV argues, the Arbitration Agreement is neither procedurally nor substantively unconscionable and, at most, Knezovich has argued only procedural unconscionability. DIRECTV points out that Knezovich knowingly and voluntarily entered into the Arbitration Agreement. DIRECTV also argues that Knezovich's claims fall squarely within the broad scope of the Arbitration Agreement, which specifically encompasses "all claims . . . arising out of [his] employment or its termination."

Somewhat more specifically, as to procedural matters, DIRECTV argues that Knezovich knowingly and voluntarily entered into the Arbitration Agreement, because he had the time to consider its terms and ask any questions he may have had, the Arbitration Agreement is in a separate, clearly labeled document, and it is supported by

valuable consideration because of the mutual promises to arbitrate. DIRECTV points out that Knezovich signed the Arbitration Agreement right beneath a conspicuous acknowledgment that he had read and understood both the Arbitration Agreement and the "Arbitration Procedure." DIRECTV also argues that Knezovich did so in the absence of any circumstances that would constitute coercion.

Knezovich counters that the Arbitration Agreement cannot be specifically enforced, because of the fatal flaw that DIRECTV has not provided evidence that he ever agreed to, or received, the Arbitration Agreement in its entirety. He contends he was never given a copy of any "Arbitration Procedure" to review and none was included in his personnel file or otherwise available. He contends that he never saw the Arbitration Procedure General, submitted by DIRECTV as the "Arbitration Procedure" in question, until this litigation commenced and his counsel was given a copy by DIRECTV's counsel. He also contends that the Arbitration Procedure General is not necessarily the "Arbitration Procedure" referred to in the Arbitration Agreement, because it has a different name.

More specifically, Knezovich argues that the "Arbitration Procedure," whatever it is, was not properly incorporated into the Arbitration Agreement by reference. This is so, he contends, because the document DIRECTV offers has a different title from the one that the Arbitration Agreement purports to incorporate by reference. He also contends that the "Arbitration Procedure," whatever it is, was not readily available for inspection when he signed the Arbitration Agreement, and no purported version of it was provided until he commenced this litigation. He argues that he was not given a chance to ask questions about the Arbitration Agreement or the "Arbitration Procedure," because when he asked what the Arbitration Agreement was, the site manager misrepresented its terms and directed him to sign it if he wanted the job. He likens his circumstances to those of a consumer in *Perez v. DIRECTV Group Holdings, L.L.C.*, No. 8:16–cv–1440–JLS–DFMx, 2017 WL 1836357 (C.D. May 1, 2017), in which the court found DIRECTV

had invalidly incorporated its arbitration agreement. Knezovich argues that, without proper incorporation by reference of an "Arbitration Procedure," the terms of the Arbitration Agreement cannot be enforced, because they are too indefinite, particularly where the "Arbitration Procedure" purportedly identifies what claims are and are not covered.

In reply, DIRECTV contends that Knezovich is trying to sow doubt where there is none: Knezovich does not dispute that he knowingly and voluntarily agreed to arbitrate his claims and signed the Arbitration Agreement. DIRECTV argues that Knezovich's claims for disability discrimination arise out of the termination of his employment, which is clearly encompassed within the Arbitration Agreement, and that Knezovich knew, definitely and for certain, from the plain reading of the Arbitration Agreement, that he must arbitrate such claims.

DIRECTV reiterates that, because Knezovich only challenges procedural unconscionability, he cannot invalidate the Arbitration Agreement. Moreover, DIRECTV points out that Knezovich knew what he was signing, asked his manager a question about the Arbitration Agreement, then signed it, because he wanted the job, which falls well short of any circumstance showing coercion. DIRECTV argues that, because of the acknowledgment, in all capital letters, above Knezovich's signature in the Arbitration Agreement, Knezovich cannot credibly argue that he did not understand that he was signing an arbitration agreement that required him to waive his right to a civil action and jury trial for claims related to his employment and termination of employment. Moreover, DIRECTV asserts that Knezovich's argument now is contrary to his acknowledgment that he had read both the Arbitration Agreement and the "Arbitration Procedure," understood them, and voluntarily agreed to them, without reliance on any promises or representations other than those in the documents.

DIRECTV also reiterates that the "Arbitration Procedure" was properly incorporated by reference into the Arbitration Agreement, because the "Arbitration

Procedure" was adequately identified and readily available for Knezovich's inspection. DIRECTV contends that the Arbitration Procedure General *is* that "Arbitration Procedure." DIRECTV points out that the Arbitration Procedure General is identified in its first line as "DIRECTV . . . Arbitration Procedure," thus matching the reference in the Arbitration Agreement, and that the declaration of DIRECTV's human resources manager shows that the Arbitration Procedure General was readily available for inspection by Knezovich at all times—and Knezovich signed the acknowledgment in the Arbitration Agreement that he had read and understood the "Arbitration Procedure."

Next, DIRECTV argues that the Arbitration Agreement plainly encompasses Knezovich's claims, because of its broad language, subject only to exclusions listed in the Arbitration Procedure General, concerning claims for unemployment compensation, workers' compensation claims, and injunctive relief claims, which are not at issue here. In any event, DIRECTV contends that the arbitrator, not the court, decides procedural matters, such as what arbitration procedures apply to Knezovich.

## II. LEGAL ANALYSIS

### A. Procedure For Deciding A Motion To Compel Arbitration

The Federal Arbitration Act (FAA) provides, in pertinent part, that when a party petitions a federal court for an order directing arbitration pursuant to an arbitration agreement, the following procedures apply:

> The court shall hear the parties, and upon being satisfied that the making of the agreement for arbitration or the failure to comply therewith is not in issue, the court shall make an order directing the parties to proceed to arbitration in accordance with the terms of the agreement. . . . If the making of the arbitration agreement or the failure, neglect, or refusal to perform the same be in issue, the court shall proceed summarily to the trial thereof. If no jury trial be demanded by the party alleged to be in default, or if the matter in dispute is

within admiralty jurisdiction, the court shall hear and
determine such issue. Where such an issue is raised, the party
alleged to be in default may, except in cases of admiralty, on
or before the return day of the notice of application, demand
a jury trial of such issue, and upon such demand the court
shall make an order referring the issue or issues to a jury in
the manner provided by the Federal Rules of Civil Procedure,
or may specially call a jury for that purpose.

9 U.S.C. § 4.

Thus, § 4 provides for a trial, before a jury or the court, "[i]f the making of the
arbitration agreement . . . be in issue." *Hendrix v. Branton*, 38 F.3d 1218 (9th Cir.
1994) ("Once the district court determines that the making of the agreement to arbitrate
is in issue, it is to proceed 'summarily' to trial of that issue." (citing 9 U.S.C. § 4)).
Nevertheless, the Ninth Circuit Court of Appeals and the Idaho Supreme Court have
recognized that summary judgment procedures are appropriate to resolve a motion to
compel arbitration. *See, e.g., Three Valleys Mun. Water Dist. v. E.F. Hutton & Co.*,
925 F.2d 1136, 1141 (9th Cir. 1991) ("'If there is doubt as to whether such an agreement
exists, the matter, upon a proper and timely demand, should be submitted to a jury. Only
when there is no genuine issue of fact concerning the formation of the agreement should
the court decide as a matter of law that the parties did or did not enter into such an
agreement.'" (quoting with approval *Par-Knit Mills, Inc. v. Stockbridge Fabrics Co.*,
636 F.2d 51, 54 (3d Cir. 1980)); *accord Cox v. Ocean View Hotel Corp.*, 533 F.3d 1114,
1119 (9th Cir. 2008) ("Because denial of a motion to compel arbitration has the same
effect as a grant of partial summary judgment denying arbitration, Cox's motion for
partial summary judgment was the functional equivalent of an opposition to Ocean View's
motion, and we will treat it as such."); *see also Wattenbarger v. A.G. Edwards & Sons,
Inc.*, 150 Idaho 308, 317 (2010) ("When ruling on a motion to compel arbitration, the
district court applies the same standard as if ruling on a motion for summary judgment.").
Such a procedure is consistent with § 4's requirement of a trial only "[i]f the making of

the arbitration agreement . . . be in issue," that is, only if there are genuine issues of material fact as to the making of the agreement. In the absence of any genuine issues of material fact, the court can properly determine the existence and validity of the arbitration agreement as a matter of law.

Here, there can be no doubt that the parties anticipated resolution of DIRECTV's Motion To Compel Arbitration by applying summary judgment procedures. Both parties submitted declarations and other documents in support of and resistance to that Motion. Moreover, the parties engaged in some informal exchange of documents, which led to DIRECTV providing a copy of Knezovich's personnel file and a copy of the Arbitration Procedure General to Knezovich's counsel, and no party has requested any discovery prior to disposition of DIRECTV's Motion. *Cf. Soltero v. Macy's, Inc.*, 607 F. App'x 750, 751 (9th Cir. 2015) (slip op.) ("The parties conferred over a month and a half before the hearing on Macy's motion to compel arbitration, but Soltero propounded no discovery requests. Further, there were no surprises here. Soltero filed a declaration in support of her opposition to Macy's motion to compel arbitration, which demonstrates that Soltero and her counsel had notice that the motion would be treated as a motion for summary judgment." (citations omitted)). Also, no party has requested either an evidentiary hearing or a trial on the Motion.

Therefore, I will consider whether there are any genuine issues of material fact as to the making of the Arbitration Agreement in this case and, if not, whether to compel arbitration as a matter of law.

## B.     Standards For Enforcement Of An Arbitration Agreement

As the Ninth Circuit Court of Appeals very recently explained,

> Since the FAA "mandates … arbitration on issues as to which an arbitration agreement has been signed," *Dean Witter Reynolds, Inc. v. Byrd*, 470 U.S. 213, 218, 105 S.Ct. 1238,

84 L.Ed.2d 158 (1985), when, as here, an arbitration agreement involves "a contract evidencing a transaction involving commerce," 9 U.S.C. § 2, our role is limited "to determining (1) whether a valid agreement to arbitrate exists and, if it does, (2) whether the agreement encompasses the dispute at issue." *Chiron Corp v. Ortho Diagnostic Sys., Inc.*, 207 F.3d 1126, 1130 (9th Cir. 2000).

*United States ex rel. Welch v. My Left Foot Children's Therapy, L.L.C.*, 871 F.3d 791, ___, 2017 WL 3976314, at *3 (9th Cir. 2017).[1] The party seeking to compel arbitration bears "'the burden of proving the existence of an agreement to arbitrate by a preponderance of the evidence.'" *Norcia v. Samsung Telecomm. Am., L.L.C.*, 845 F.3d 1279, 1283 (9th Cir. 2017) (quoting *Knutson v. Sirius XM Radio Inc.*, 771 F.3d 559, 565 (9th Cir. 2014)).

"Under the FAA, the 'interpretation of an arbitration agreement is generally a matter of state law,'" *id.* (quoting *Stolt-Nielse S.A. v. AnimalFeeds Int'l Corp.*, 559 U.S. 662, 681 (2010)), and since the Arbitration Agreement in this case was signed in Idaho by an Idaho resident, both parties have argued the motion under Idaho contract law. *Cf. id.* Notwithstanding that Idaho law applies,

> "the FAA imposes certain rules of fundamental importance" that must also guide our interpretation "including the basic precept that arbitration is a matter of consent, not coercion," [*Stolte-Nielse*, 559 U.S. at 681] (internal quotation marks omitted), and the rule that "questions of arbitrability must be addressed with a healthy regard for the federal policy favoring arbitration." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 24, 103 S.Ct. 927, 74 L.Ed.2d 765 (1983).

*Welch*, 871 F.3d at ___, 2017 WL 3976314, at *3.

---

[1] The Arbitration Agreement states, in part, "The parties agree that the Company is engaged in transactions involving interstate commerce." Arbitration Agreement, unnumbered ¶ 6. No party has argued that the FAA does not apply.

As to unenforceability of agreements, generally, and arbitration agreements, in particular, the Idaho Supreme Court has explained,

> In order for a contractual provision to be voided for unconscionability, it must be both procedurally and substantively unconscionable. [*Lovey v. Regence Blueshield of Idaho*, 139 Idaho 37, 42, 72 P.3d [877,] 882 [(2003]. Procedural unconscionability concerns the bargaining process leading to the formation of a contract while substantive unconscionability focuses on the contract's terms. *Id.*

*Wattenbarger v. A.G. Edwards & Sons, Inc.*, 150 Idaho 308, 321 (2010); *see also Lovey v. Regence BlueShield of Idaho*, 139 Idaho 37, 41 (2003) ("Because unconscionability is also a ground for voiding a contract, *Smith v. Idaho State Univ. Fed. Credit Union*, 114 Idaho 680, 760 P.2d 19 (1988), it can also be a basis for revoking an agreement to arbitrate.").

The Idaho Supreme Court explained procedural unconscionability, which is what Knezovich has put at issue here, in more detail, as follows:

> Procedural unconscionability exists "when the contract 'was not the result of free bargaining between the parties.'" [*Lovey*, 139 Idaho at 42] (quoting *N.W. Pipeline Corp. v. Forrest Weaver Farm, Inc.*, 103 Idaho 180, 183, 646 P.2d 422, 425 (1982)). Indicators of procedural unconscionability generally include a lack of voluntariness and a lack of knowledge. *Id.* Indicators of lack of voluntariness include "the use of high-pressure tactics, coercion, oppression or threats short of duress." *Id.* A lack of voluntariness can be shown by an imbalance in bargaining power resulting from the non-negotiability of the stronger party's terms and the inability to contract with another party due to time, market pressures, or other factors. *Id.* Indicators of a lack of knowledge include a "lack of understanding regarding the contract terms arising from the use of inconspicuous print, ambiguous wording, or complex legalistic language; the lack of opportunity to study the contract and inquire about its

terms; or disparity in sophistication, knowledge, or
experience of the parties." *Id*.

*Wattenbarger*, 150 Idaho at 321.[2]

I turn, next, to application of these standards.


### C.      *Application Of The Standards*

#### 1.      *Existence of a valid agreement*

There is no dispute that Knezovich signed the Arbitration Agreement, although he did not sign any "Arbitration Procedure," and he contends that no such "Arbitration Procedure" was in his packet of paperwork to be signed at the time of his hire.  Thus, Knezovich argues that he did not know all the terms of the Arbitration Agreement.  He

---

[2] The court in *Wattenbarger* also explained substantive unconscionability in more detail, as follows:

> The focus of substantive unconscionability is solely on the terms of the contractual provision at issue. [*Lovey*, 139 Idaho at 42]. A provision is substantively unconscionable if it is a bargain no reasonable person would make or that no fair and honest person would accept. *Id*. If a contract term is one-sided or oppressive, it may be substantively unconscionable. *Id*. In determining whether a term is unconscionable, a court must consider "the purpose and effect of the terms at issue, the needs of both parties and the commercial setting in which the agreement was executed, and the reasonableness of the terms at the time of contracting." *Id*. at 42–43, 72 P.3d at 882–83.

*Wattenbarger*, 150 Idaho at 321.  DIRECTV is correct that none of Knezovich's arguments go to the substantive unconscionability of the Arbitration Agreement. Consequently, it appears that the Arbitration Agreement cannot be invalidated on the basis of unconscionability, even if Knezovich's arguments concerning procedural unconscionability, challenging knowledge and voluntariness, are successful. *Id*. Even so, I will address Knezovich's procedural unconscionability arguments.

also argues that he only signed the Arbitration Agreement, because it was a requirement for employment, thus suggesting that his agreement was not knowing or voluntary.

### a.  *Coercion*

"Coercion" is a recognized challenge to the voluntariness of an agreement, such as an arbitration agreement, under Idaho law.  *See Wattenbarger*, 150 Idaho at 321; *accord Welch*, 871 F.3d at ___, 2017 WL 3976314, at *3 (explaining that one rule from the FAA of fundamental importance is that arbitration is a matter of consent not coercion).  Judge Edward Lodge of this court recently explained that requiring an employee to sign an arbitration agreement as a condition of employment is subject to Idaho law regarding adhesion contracts:

> An adhesion contract is "an agreement between two parties of unequal bargaining strength, expressed in the language of a standardized contract, written by the more powerful bargainer to meet its own needs, and offered to the weaker party on a 'take it or leave it basis.'" *Lovey*, 72 P.3d at 883. Adhesion contracts are not per se unconscionable. *See AT&T Mobility LLC*, 563 U.S. at 346; *see also Lovey*, 72 P.3d at 883 ("an adhesion contract cannot be held procedurally unconscionable solely because there was no bargaining over the terms. Adhesion contracts are a fact of modern life. They are not against public policy."). Use of an adhesion contract "may constitute procedural unconscionability if [Plaintiff] was prevented by market factors, timing, or other pressures from being able to contract with another party on more favorable terms or to refrain from contracting at all." *Lovey*, 72 P.3d at 883.

*Simmons v. Rush Truck Centers of Idaho, Inc.*, No. 4:16-CV-00450-EJL, 2017 WL 2271123, at *5 (D. Idaho May 24, 2017).  Judge Lodge then rejected the plaintiff employee's contention that the arbitration agreement in his case was an unconscionable adhesion contract, *inter alia*, because the plaintiff "ha[d] not shown what factors, timing, or other pressures would have prevented him from obtaining employment from another

employer who did not require arbitration as a means of dispute resolution." *Id.* The same is true here: Merely asserting that signing the Arbitration Agreement was a condition of his employment did not make the Arbitration Agreement involuntary, and Knezovich has offered nothing more.

### b. Incorporation by reference

In this case, the validity of the Arbitration Agreement turns primarily on whether the Arbitration Agreement validly incorporated the "Arbitration Procedure" by reference and the companion question of whether the Arbitration Procedure General, submitted by DIRECTV, is the "Arbitration Procedure" referred to in the Arbitration Agreement. Knezovich argues that the "Arbitration Procedure" was not validly incorporated, because it was unavailable at the time that he signed the Arbitration Agreement. He bases his "unavailability" argument on his averments that the "Arbitration Procedure" was not in his packet of documents requiring his signature and that his questions about the Arbitration Agreement were brushed aside or given misleading answers.

Even where an agreement contains an integration or merger clause, "'[a] signed agreement may incorporate by reference to another agreement, which is not signed by the parties, if the terms to be incorporated are adequately identified and readily available for inspection by the parties.'" *City of Meridian v. Petra Inc.*, 154 Idaho 425, 435 (2013) (quoting *Harris, Inc. v. Foxhollow Const. & Trucking, Inc.*, 151 Idaho 761, 777 (2011)). As the Idaho Supreme Court has explained,

> In *Loomis v. Cudahy*, this Court held that the terms of another agreement not signed by the parties can be incorporated into the signed agreement by reference when the unsigned terms are readily available for inspection by the parties. 104 Idaho 106, 118–19, 656 P.2d 1359, 1371–72 (1982). The new account card signed by Tifani makes clear reference to the portion of the custodial account agreement that contains the arbitration clause. Furthermore, as noted above, there is no evidence that Tifani was not provided with the custodial

17

> account agreement or that it was not available to her. Thus,
> Tifani is bound by the arbitration clause even though it is not
> contained in the signed agreement.

*Wattenbarger v. A.G. Edwards & Sons, Inc.*, 150 Idaho 308, 320 (2010).

In this case, much as in *Wattenbarger*, the Arbitration Agreement "makes clear reference[s]" to the "Arbitration Procedure" adequately identifying the terms incorporated. *Id.*; *City of Meridian*, 154 Idaho at 435. The Arbitration Agreement states that disputes subject to arbitration are "all claims or controversies, past, present or future, except claims identified in the Arbitration Procedure under the heading 'Claims Not Covered by the Agreement,'"; "Except as set forth in the Arbitration Procedure, the decision of the Arbitrator shall be final and binding upon all parties"; the arbitration "shall be conducted in accordance with the Arbitration Procedure"; "This Agreement, and/or the Arbitration Procedure, do not create nor are either to be construed to create any contract of employment, expressed or implied, and is in no way intended to alter or affect Employee's status as an employee"; "If any part of this Agreement or the Arbitration Procedure is found to be void or otherwise unenforceable, the remainder of the Agreement/Arbitration Procedure will continue to be in full force and effect." Arbitration Agreement; *see also id.*, unnumbered ¶ 1 ("The Company's Arbitration Procedure is intended to be an impartial, cost effective and speedy mechanism for resolving employment or other disputes between the Company and its employees."); *id.* "Acknowledgment" para. (acknowledging that the employee has read and understood the Arbitration Agreement and the Arbitration Procedure and that the employee is not relying on any promises or representations other than those in those documents).

Knezovich contends that, notwithstanding the acknowledgment in the Arbitration Agreement he signed, he did not read and did not have ready access to the "Arbitration Procedure." *See Wattenburger*, 150 Idaho at 320. DIRECTV's failure to make sure the "Arbitration Procedure" was included in Knezovich's packet of documents at the time he was required to sign the Arbitration Agreement is an extremely poor business practice and borders on the deceptive. While it isn't illegal, it is inexcusable for employers not to provide prospective employees with a copy of an arbitration procedure at the same time they ask prospective employees to review and sign an arbitration agreement incorporating that arbitration procedure by reference as a condition of employment.



Nevertheless, "'[t]he rule in Idaho is well established that a party's failure to read a contract will not excuse his performance.'" *Allen v. Reynolds*, 145 Idaho 807, 811 (2006) (quoting *Irwin Rogers Ins. Agency, Inc. v. Murphy*, 122 Idaho 270, 273, 833 P.2d 128, 131 (Ct. App. 1992)). To put a still finer point on the matter, "a written contract cannot be avoided by one of the parties to it on the ground that he signed it without reading it and did not understand it; failing to read the contract or to have it read to him or to otherwise inform himself as to the nature, terms and conditions of the contract constitutes nothing more than gross negligence on the part of that party and is an insufficient ground upon which to set the contract aside." *Liebelt v. Liebelt*, 118 Idaho 845, 848–49 (Ct. App. 1990). It is all the more negligent for a party to fail to read a contract or incorporated document, and to fail to ask for any incorporated document that appears to be missing, when the party signs an acknowledgment that the party *has* read and understood those documents.

Even if the "Arbitration Procedure" was not in Knezovich's paperwork at the time he signed the Arbitration Agreement, Knezovich's contentions that the "Arbitration Procedure" was not readily available to him are not enough to present a triable issue.

Knezovich asked what the Arbitration Agreement was, so he could also have asked to see the "Arbitration Procedure" if he did not think it was in his paperwork. Because he signed the Arbitration Agreement right below the acknowledgment, in all capital letters, that he had read and understood the "Arbitration Procedure," his failure to ask to see a possibly missing document was also "nothing more than gross negligence." *Cf. Liebelt*, 118 Idaho at 848-49. Moreover, the fact that the document was not already in his pile of paperwork does not mean that it was not "readily available." That contention is merely conclusory. In contrast, the human resources manager has averred, "Employees could also request a copy of the Arbitration Agreement and Arbitration Procedure at any time," and that company practice was that an employee's manager or site administrator would reach out to human resources if a new hire had any questions. Declaration of Jennifer Tate, ¶ 12. Although Knezovich asserts that the possibility that the "Arbitration Procedure" was readily available to him is merely speculative, ultimately, his negligence in failing to ask to see it at the time he signed the Arbitration Agreement, representing that he *had* read it, defeats his challenge to the availability of the "Arbitration Procedure."

Knezovich's argument that it is unclear whether the Arbitration Procedure General submitted by DIRECTV is the "Arbitration Procedure" incorporated by reference in the Arbitration Agreement is also insufficient to raise a triable issue. It is true that the Arbitration Agreement could not incorporate by reference a later-dated "Arbitration Procedure," *see City of Meridian*, 154 Idaho at 435, but there is no evidence that the Arbitration Procedure General is a later-dated or later-created document. As DIRECTV points out, the Arbitration Procedure General expressly identifies itself as "DIRECTV [the 'Company'] Arbitration Procedure," thus matching the references in the Arbitration Agreement. Arbitration Procedure General, unnumbered ¶ 1. Furthermore, both the Arbitration Agreement and the Arbitration Procedure General refer to the arbitration scheme in place since January 1, 1993. *Id.*; Arbitration Agreement, unnumbered ¶ 3 ("Claims and disputes by employees hired after January 1, 1993 shall be governed by

this Agreement."). Once again, Knezovich's speculation that some other "Arbitration Procedure" might have been the document incorporated by reference into the Arbitration Agreement founders on his negligence in failing to ask for and read the "Arbitration Procedure," where he acknowledged by his signature that he had read and understood it, as well as the Arbitration Agreement. *Cf. Liebelt*, 118 Idaho at 848-49.[3]

Thus, I conclude, as a matter of law, that a valid Arbitration Agreement existed, that the "Arbitration Procedure" to which it refers is the Arbitration Procedure General, and that the Arbitration Procedure General was validly incorporated by reference into the Arbitration Agreement.

### 2. *Applicability To The Dispute At Issue*

The second determination that I must make is "whether the agreement encompasses the dispute at issue." *Welch*, 871 F.3d at ___, 2017 WL 3976314, at *3 (citation omitted). In other words, I must "consider whether the text of the [Arbitration Agreement] is broad enough to encompass this lawsuit." *Id.* at ___, 2017 WL 3976314, at *5. In doing so, I must recognize that "the specific governs the general," so that a provision broadly defining the kinds of claims encompassed by an arbitration agreement, such as "any and all disputes," may be limited by "plain language imposing a textual limitation" on the kinds of claims that must be arbitrated, such as claims that "arise from, relate to, or [are] connected with [an employee's] employment or association with [the employer]." *Id.* at 797.

---

[3] Knezovich's attempt to liken his case to that of the plaintiff consumer in *Perez v. DIRECTV Group Holdings, L.L.C.*, No. 8:16–cv–1440–JLS–DFMx, 2017 WL 1836357 (C.D. May 1, 2017), fails. In *Perez*, the arbitration agreement was purportedly incorporated by reference into a consumer's Equipment Lease Agreement (ELA), but reference to the arbitration provision was inconspicuously placed and did not have a conspicuous acknowledgment that the consumer had read and understood it and any documents incorporated by reference. 2017 WL 1836357, at *5-*6.

Here, the "provision identifying claims encompassed by the Arbitration Agreement, in the Arbitration Agreement itself, states a very general scope, that the Arbitration Agreement encompasses "all claims or controversies, past, present or future, except claims identified in the Arbitration Procedure under the heading 'Claims Not Covered by the Agreement,'" but then imposes a specific limitation, that the Arbitration Agreement applies only to claims *arising out of* an employee's employment or its termination." Arbitration Agreement, unnumbered ¶ 2 (emphasis added). The Ninth Circuit Court of Appeals "h[as] held[ ] the words arising out of are 'relatively narrow as arbitration clauses go,' and 'understood to mean originating from[,] having its origin in, growing out of or flowing from.'" *Welch*, 871 F.3d at ___, 2017 WL 3976314, at *5 (citations omitted).[4] Knezovich's disability discrimination claims are plainly encompassed by this "relatively narrow" scope, because his claims do have their origin in, grow out of, or flow from his employment, in that he would not have such claims if he had not been employed by DIRECTV. *Id.* (considering whether the plaintiff would have had the same claims, even if he had never been employed by the defendant, where the arbitration agreement at issue in that case encompassed both claims "arising out of" and "relat[ing] to" employment). Nor are Knezovich's claims excluded from the scope of the Arbitration Agreement by the further specific limitations in the Arbitration Procedure General, properly incorporated by reference, which exclude unemployment compensation claims, workers' compensation claims, and injunctive relief claims, which are not at issue here. Indeed, because Knezovich acknowledged that he had read and

---

[4] In *Welch*, the court also "recognized that the phrase 'relate to' is broader than the phrase 'arising out of' or 'arising under,'" but that it, nevertheless, "marks a boundary by indicating some direct relationship." 871 F.3d at ___, 2017 WL 3976314, at *5. Although DIRECTV sometimes argues, in its brief, that the Arbitration Agreement, here, encompasses claims "relating to" Knezovich's employment, neither the Arbitration Agreement nor the Arbitration Procedure General states that the Arbitration Agreement includes claims "relating to" Knezovich's employment.

understood both the Arbitration Agreement and the Arbitration Procedure General, he must be deemed to have known and understood that the claims at issue, here, were encompassed within the Arbitration Agreement and not excluded by the Arbitration Procedure General.

### 3.    Summary

Thus, the Arbitration Agreement exists, is valid, and encompasses the dispute at issue. *Welch*, 871 F.3d 791, ___, 2017 WL 3976314, at *3. Knezovich has failed to generate any triable issues to the contrary. *Three Valleys Mun. Water Dist.*, 925 F.2d at 1141 (explaining that the court should decide as a matter of law whether the parties entered into a valid arbitration agreement, only if "there is no genuine issue of fact concerning the formation of the agreement"); *Wattenbarger*, 150 Idaho at 317 ("When ruling on a motion to compel arbitration, the district court applies the same standard as if ruling on a motion for summary judgment."). Thus, I will compel arbitration of Knezovich's claims.


## D.    Stay Or Dismissal

Because I will compel arbitration, I must decide whether to stay this case pending arbitration or outright dismiss it. DIRECTV argues that I should dismiss Knezovich's Complaint in its entirety, rather than stay this case pending arbitration, because that is the course favored by the greater weight of authorities. Knezovich requests that, even if I find that his claims must be arbitrated, I should retain jurisdiction and only stay these proceedings pending arbitration. He does not explain, however, why that is the better course.

"The FAA provides that district courts must stay pending proceedings on issues subject to arbitration until such arbitration has been had." *Tillman v. Tillman*, 825 F.3d 1069, 1075 (9th Cir. 2016) (citing 9 U.S.C. § 3); *Johnmohammadi v. Bloomingdale's, Inc.*, 755 F.3d 1072, 1073 (9th Cir. 2014) ("In these circumstances § 3 of the FAA, 9

U.S.C. § 3, seems to direct that the action 'shall' be stayed pending completion of arbitration." (citing cases so holding)). The Ninth Circuit Court of Appeals "ha[s] held that, notwithstanding the language of § 3, a district court may either stay the action or dismiss it outright when, as here, the court determines that all of the claims raised in the action are subject to arbitration." *Johnmohammadi*, 755 F.3d at 1073-74 (citing *Sparling v. Hoffman Constr. Co.*, 864 F.2d 635, 638 (9th Cir. 1988)). As the Ninth Circuit Court of Appeals explained,

> The choice matters for purposes of appellate jurisdiction: An order compelling arbitration and staying the action isn't immediately appealable, 9 U.S.C. § 16(b)(1)-(2); *Green Tree Fin. Corp.–Ala. v. Randolph*, 531 U.S. 79, 87 n. 2, 121 S.Ct. 513, 148 L.Ed.2d 373 (2000), but an order compelling arbitration and dismissing the action is. § 16(a)(3); *Green Tree*, 531 U.S. at 89, 121 S.Ct. 513.

*Johnmohammadi*, 755 F.3d at 1074.

It appears that the primary consideration is whether "the arbitration clause [i]s broad enough to bar all of the plaintiff's claims [by] requir[ing] [the plaintiff] to submit all claims to arbitration," and if it is, dismissal is appropriate. *Sparling*, 864 F.3d at 638. Here, all of Knezovich's claims must be submitted to arbitration. *Id.* Moreover, I personally prefer to clear the way for a party's prompt appeal of an adverse ruling, if possible, rather than subject the parties to the delay and expense of further proceedings that might otherwise lead to a disposition that could be undone in a much later appeal. Only a dismissal will do that, here. *Johnmohammadi*, 755 F.3d at 1074. Under these circumstances, I conclude that the proper course is to dismiss Knezovich's federal action, in its entirety, without prejudice.

## III. CONCLUSION

Upon the foregoing, DIRECTV's August 30, 2017, Motion To Compel Arbitration And To Dismiss (docket no. 6) is **granted**, as follows:

1.      **The parties are ordered to arbitration**, pursuant to their signed Arbitration Agreement and the Arbitration Procedure General incorporated therein by reference, **as to all claims in Knezovich's Complaint**; and

2.      Knezovich's Complaint is **dismissed in its entirety.**

**IT IS SO ORDERED**.

**DATED** this 13th day of October, 2017.

MARK W. BENNETT
U.S. DISTRICT COURT JUDGE
NORTHERN DISTRICT OF IOWA